Lucien Eaton, Assignee, Appellant, *v.* St. Louis, Iron Mountain and Southern Railway Company, Respondent.

### June 20, 1882.

1. A railroad company which delivers goods at its freight depot at the point of destination on time need not notify the consignee of their arrival.

2. If a case has not been tried on any theory that the custom varies the rule, and no instructions as to custom are asked, a failure to submit the question of custom to the jury is not ground for a reversal of the judgment.

Appeal from the St. Louis Circuit Court, Adams, J.
*Affirmed.*
W. B. Thompson, for the appellant.
Bennett Pike, for the respondent.

Bakewell, J., delivered the opinion of the court.

This is an action to recover $500 damages for breach of contract of affreightment by which the goods delivered to defendant were lost to plaintiff.

The petition alleges that defendant is a common carrier, and that, on December 11, 1878, defendant contracted with plaintiff at St. Louis, to ship to New Orleans, Louisiana, over its own track and in its own carriages, and to deliver to connecting lines of transportation by railroad, forty casks of lager beer and one box of samples, and to deliver the same within a reasonable time and in good condition to Cornibe & Duchenne, of New Orleans, the consignees thereof; that after receiving this merchandise upon this

contract, defendant failed to deliver the same to the consignees within a reasonable time, whereby the beer was lost to plaintiff.

There was a general denial. But on the trial, a stipulalation was filed which left nothing to try but the loss of the goods and the failure to deliver within a reasonable time to Cornibe & Duchenne, the consignees at New Orleans. The verdict and judgment were for defendant.

The evidence tended to show that, about December 11, 1878, plaintiff shipped over defendant's road forty casks of bottled beer, making about half a car-load. The beer was consigned to Cornibe & Duchenne, in New Orleans, to whom it had been sold. It arrived in due time, about the 18th of December, over the road of defendant and the connecting roads. The connections are, at Belmont with the ――――― Road, and at Mobile with the Mobile and New Orleans Road. The proper depot, at which the goods arrived, is the depot of the Mobile and New Orleans Road. The bill of lading for the goods, and the invoice, were enclosed to the consignees by the shippers on the day the goods were shipped, and were received in due course of mail. When the drafts of the shippers reached the consignees in December, they refused to accept them, on the ground that they had not received the goods. There is testimony tending to show that defendant sent immediate notice to the consignees that the goods had arrived, and some testimony tending to show that such notice was received by the consignees. There is also testimony tending to show that no properly directed notice was ever sent to the consignees by defendant, and that the consignees received no notice. In February, 1879, an agent of plaintiff came to New Orleans to trace the goods, and found them in defendant's possession. But the consignees then refused to receive them, the consignor also refused to take them, and they were sold by the defendant for freight and charges. A clerk of the consignees testifies that, shortly after the arrival of the draft, he called at the freight office

of the Mobile, New Orleans and Texas Road, and asked if a cart-load (this is probably a mistake in the transcript for car-load) of beer had arrived for them, and was told that it had not. One of the consignees testified that they never sent to the depot for the goods; and one of the depot officers testifies that one of the consignees made inquiries there for whiskey. There was also testimony that the consignees were in the habit of sending for goods to this depot about once a month. The depot was a large one, and the freight business there in December, which was the heaviest month, amounted to about $60,000.

The court was asked to instruct the jury that, in case of non-delivery, defendant cannot excuse itself by showing that the goods reached the depot of its connecting line in New Orleans within the usual time, and that it was their duty to apprise the consignees of their arrival. This instruction the court refused, and gave the following instruction of its own motion : —

"Under the pleadings and stipulations filed and read in evidence, it stands admitted for purposes of the trial in this cause, that on or about the eleventh day of December, 1878, the plaintiff's assignor, the Joseph Uhrig Brewing Company, delivered to the defendant railroad, forty casks of lager beer and one box of samples, under a contract then made between the parties, which required the said defendant railroad company to carry over its own and connecting lines of railroad, the said merchandise to the city of New Orleans, state of Louisiana, and there to deliver the same within a reasonable time and in good condition, to Cornibe & Duchenne, of New Orleans, the consignees of said merchandise.

"It further stands admitted, that the plaintiff's assignor, at the time of the shipment, was the owner of the goods so shipped.

"The delivery of the merchandise to the defendant company under and pursuant to said contract, imposed a duty

upon the defendant to carry and deliver the said merchandise according to the contract.

" You are further instructed that, the delivery of the same to the defendant company under the contract aforesaid being admitted, the burden of proof rests upon the defendant as a common carrier to show to your satisfaction, that it carried and delivered the merchandise to the parties named, or caused the same to be so done, within a reasonable time.

" You are further instructed that the delivery contemplated and required by this contract, does not mean a delivery of the merchandise at the place of business or house of the consignees in New Orleans, but rather, at the depot in the city of New Orleans, of the last connecting line of railroads employed by the defendant to complete the carriage.

" Relative to notice to the consignees, you are instructed that if you find from the evidence that the merchandise shipped arrived at New Orleans and was deposited in the depot, and there remained a reasonable time ready for the consignees to receive and take away upon demand by them, said depot being the depot of the last connecting line, and that the same so arrived and were so deposited within the time then usually taken to convey such merchandise from St. Louis to New Orleans by rail, then no notice of the arrival of such merchandise to the consignees was required.

" If, on the contrary, you find from the evidence that said merchandise did not arrive in New Orleans and was not so deposited and allowed to remain a reasonable time in the said depot, and that such was not done within the usual time then taken to carry such merchandise from St. Louis to New Orleans by rail, then notice to the consignees of its arrival was required.

" Concerning the case as made, you are therefore instructed by the court, that if you find from the evidence that the defendant, within a reasonable time after it received the merchandise in question for shipment at St. Louis, caused

the same to be carried over its own and other railroad lines connecting with its own, to the city of New Orleans, and there deposited the same or caused the same to be deposited in the depot or warehouse of the last connecting line employed by it for the carriage, and that the same was there ready to be received and taken away by the consignees on demand.

" And if you further find the facts which the court has before told you, make a case in which no notice to the consignees of the arrival of the merchandise was required, or, if required, that the same was given to the consignees, then your verdict shall be for the defendant. On the contrary, if you find that said merchandise was not so carried and delivered within a reasonable time, or that under the foregoing instructions notice to the consignees of the arrival of the merchandise was required, and not given, then your verdict should be for the plaintiff.

" If, under all of the foregoing instructions, you find the issues submitted to you in favor of the plaintiff, you will assess his damages under the stipulation of the parties read in evidence, at such sum as you may find the books of the plaintiff's assignor to show was the value of the property, and charged to the consignees."

As to the duty of giving notice, we regard this instruction as correct. In other respects, the appellants have no reason to complain of it, and it was warranted by the evidence.

The case of *Rankin* v. *Pacific Railroad* (55 Mo. 167), seems to be decisive of the present case as to the question of notice. " The rule in respect to notifying consignees of the arrival of goods," says the supreme court in that case, " does not apply to railroads where the goods are delivered on time. They are not required, as carriers by wagon, to deliver at the place of business or house of the consignee ; nor, as carriers by water, to notify the consignee of the arrival at the wharf. Their route is confined

to the track, and the delivery must be at the depot, or by the roadside; and if there be no one to receive them, they may store them without charge for a reasonable time till the consignee calls for them. It is the duty of the consignee to do so without notice, as the usual certainty of the arrival of the train renders such notice unnecessary."

It is contended by appellant that the rule laid down by the court has no application where the carrier undertakes and holds out to the consignee that he will give notice, and that, in accordance with a general custom prevailing at New Orleans, and with the carrier at the place of destination, notice ought to have been given to the consignee.

But the case was not tried upon any such theory. No instruction was asked as to the effect of any peculiar custom in New Orleans. Nor do we see any evidence which would have warranted such an instruction. Ripley, for plaintiff, testified that he had been, for over five years, general freight agent of the New Orleans and Mobile Road at New Orleans. When asked as to this particular freight, what was done with it, he replied: " It was manifested. Manifest put up in depot. Also presented (*sic*) in the daily papers, same as is customary with all freight arriving every day." Question: "Anything else?" Answer: "Also notices sent to the consignee." This is no evidence of a custom to send notices. The witness does not say that there was any such custom. On cross-examination the witness was asked as to the usual course of the New Orleans and Mobile Road in regard to a lot of freight consigned to a party in the city. He says, after it was discharged from the cars, it was received into the depot, and there held by the delivery clerk, subject to an order from the freight office. That it was no part of the duty of the delivery clerk to send any notice to the consignees. The witness was then asked: " What was the usual course in regard to notices to consignees? When made out, were they left to be de-

livered in a lot?" Answer: "Notices were made out for the receipts of each train as soon as they could make them out, and if freight was not taken away in forty-eight hours, duplicate notices were sent." All this does not show a general custom to change the law, of which the consignees in this case had notice. Nor, on the strength of any testimony in the case, was the court asked to instruct as to the effect of any supposed custom. This whole theory seems to be an afterthought, and if there were anything in it, we ought not, under the circumstances, to reverse the case because the court did not give an instruction which it was not asked to give.

That the liability of the carrier continues until the consignee has been notified of the receipt of the goods, and has had reasonable time to take them away after notification, has been held in some states. *McDonald* v. *W. R. R. Corp.*, 34 N. Y. ; *McMillan* v. *Railroad Co.*, 16 Mich. 79. A custom to give, or not to give, notice is generally admitted to be valid, which shows that notice is no necessary incident of the contract of carriage, as is remarked by Judge Campbell in his dissenting opinion in the case just cited. We are governed by the rule adopted by the supreme court of Missouri, which was adopted long after the matter had been discussed in other states. That the carrier's duty was not performed until notice was given to the consignee, was a new doctrine in Michigan when *McMillan* v. *Railroad Company* was decided. It had formerly been held in that state that notice, though proper and customary, was not essential to terminate the peculiar risks of the carrier ; that it was no part of the unfinished duty of the carrier, but a mere statement to the consignee that he had done his part, and they must look after their property. *Michigan, etc., R. Co.* v. *Hale*, 6 Mich. 243. And, whilst Judge Christiancy concurred in the opinion of Judge Cooley, in *McMillan* v. *Railroad Company*, and in the view that the

carrier can excuse himself from personal delivery to the con-gnee only by notice, Judge Campbell and Judge Martins dissented as to this.

Counsel for appellant insist that the contract as set out in the petition in the case at bar, and admitted by the stip-ulation, takes the case out of the ordinary rules as to the liability of a common carrier. We think not. The con-tract set out in the petition is, that defendant " delivered the goods within a reasonable time, in good condition, to Cor-nibe & Duchenne, at New Orleans, Louisiana, the con-signees thereof." There is nothing in this language which imposes upon the carrier the duty of making delivery to the consignees at New Orleans, in a method in any respect different from that which the law makes part of the duty of every common carrier of goods by railroad.

We see nothing in the record to warrant a reversal of the judgment. Judgment affirmed. All the judges concur.