THE KANSAS CITY TRANSFER CO., Respondent, v. D. G. AND G. G. NEISWANGER, Appellants.

Kansas City Court of Appeals, May 25, 1885.

1. CARRIERS OF GOODS—CONNECTING LINES—RULE AS TO DELIVERY AT TERMINUS.—If goods are delivered to a carrier for the purpose of being carried to a point beyond the terminus of that route, and for that purpose to be by him delivered to a connecting carrier in order to continue the carriage; or where it becomes necessary for that purpose to make successive deliveries, from one to another, upon a continuous line or succession of carriers, the first and each succeeding carrier becomes the agent of the owner of the goods to make delivery to the next carrier. Hutchinson on Carriers, sect. 108. But after reaching their destination, the contract does not contemplate a delivery of the goods at the place of business of the consignee, but at the depot of the last connecting line of railroads employed by the shipper to complete the carriage. Following *Rankin v. Mo. Pac. Ry. Co.*, 55 Mo. 167.

2. CUSTOM—NOTICE OF TERMINATION.—If a transfer company has been for a considerable time, in the habit of hauling freight belonging to consignees from the depot to their place of business, and paying charges thereon and collecting them from the consignees, and this is recognized by the consignees and is in accordance with the custom between them, the transfer company has a right to continue in said habit or custom until notified by the consignees to desist therefrom. On the facts of this case, the judgment is for the right party. Per Hall, J., *dissenting*.

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, J.

*Reversed and remanded.*

Statement of case by the court.

The plaintiff, to sustain the issues upon its part, offered evidence tending to prove the following particular facts and issues, to-wit : That plaintiff is a corporation, and a common carrier of freight in the City of Kansas; that on the 12th day of May, 1881, the plaintiff, in the course of its business, received from the Missouri Pacific Railway company, at its freight depot and warehouse in Kansas City, Mo., three top buggies, three sets of wheels, three pairs of shafts, and four sulkies, the property of the defendants, and directed to them at Kansas City, Mo., which the Missouri Pacific Railway company, in the course of its business, had received at St. Louis and carried to Kansas City ; that said property was received by the plaintiff at the Grand avenue depot of the Missouri Pacific Railway company ; that the same was carefully loaded into wagons and carried with care to the defendants' place of business at the corner of Eighth and Walnut streets in the City of Kansas, and there delivered to them in the same condition that it was in when received from the Missouri Pacific Railway company ; that plaintiffs' driver of its said wagon was a careful and competent teamster, and that he took from the defendants a receipt for said property, stating that the same had been received by the defendants in good order and condition ; that two days after plaintiff received said property from the Missouri Pacific Railway company, to-wit: on May 14, 1881, in accordance with its general custom and contract with the Missouri Pacific Railway company, paid said railway the sum of $41.03, being the amount of said railway company's freight and back charges against said property, and that $1.50 is a reasonable charge for carrying said property by the plaintiff from the railway company's depot to defendants' place of business, and that said sums of $41.03 and $1.50 are wholly unpaid ; that it was customary for the plaintiff, as a common carrier to pay the carrier, from which they received goods, the freight and back charges, and collect

the amount from the consignees, and for the consignees to put in their claims against the carriers for reclamation and damages.

The defendants, to sustain the issues upon their part, offered evidence tending to prove the following particular issues and facts, to-wit: That on or about May 1, 1881, Messrs Toomey & Sons, of Canal Dover, Ohio, delivered said property in good order to the .......... railway company, at that place, shipped and directed to the defendants at Kansas City, Missouri, but the bill of lading did not show over the lines of what carriers said property was to be shipped; that said bill of lading provided that said railway company should not be liable for damage done said property while in the custody of any other person or carrier; that said property was carried by said railway company from Canal Dover to Cincinnati, Ohio, and there delivered to the Ohio and Mississippi Railway company, by which company said property was carried to the City of St. Louis, and there delivered to the Missouri Pacific Railway company, and by which company said property was carried to Kansas City, where it arrived about 1 o'clock a. m., May 10, 1881; that said property was, on May 11, 1881, unloaded and put away in the warehouse or depot of said Missouri Pacific Railway company, where it remained until plaintiff took possession of it on May 12, 1881; that when said property was delivered to defendants at their place of business it had been injured and damaged to the extent of $30.65, but the injury and damage were not observed by the defendants until after they had signed a receipt for the same, stating that said property had been received in good order and condition; that for some time prior to February 1, 1881, the plaintiff had been in the habit of hauling freight belonging to the defendants from the depots in Kansas City to their place of business; that about February 1, 1881, the defendants notified the plaintiff's collector, whose business it was to collect the accounts of the plaintiff company, that the plaintiff would be no longer authorized to haul defendants' freight and not to haul any freight belonging to or consigned to

the defendants any more; that all freight consigned to defendants arriving at Kansas City after February 1, 1881, was hauled by themselves to their place of business from the depots; and no freight consigned to them arriving after February 1, 1881, has been hauled by the plaintiff except the hauling of said property on May 12, 1881; and that defendants, on May 12, 1881, upon discovering the injury and damage to said property, immediately notified plaintiff thereof.

And the plaintiff, to further sustain the issues on its part, offered evidence tending to prove the following facts and issues, to-wit: That the said bill of lading issued by the . . . . . . . . . railway company at Canal Dover, Ohio, had written across the face thereof the letters "O. R.," which means "owner's risk," and that Louis Dragon, the plaintiff's superintendent, who had charge of the receipt and delivery of freight by plaintiff, was never notified by its said collector not to haul any more freight for defendants, and no such notice ever came to the knowledge of said superintendent.

This was all the evidence offered. Whereupon the court gave the following instruction, among others, for plaintiff:

1. The court declares the law to be, that if it appear from the evidence that plaintiff is a common-carrier of freight in the City of Kansas, and in the course of its business received from the Missouri Pacific Railway company the three top buggies, three sets wheels, three pairs shafts, and four sulkies for delivery to defendants, that plaintiff paid the Missouri Pacific Railway company, in the ordinary and usual course of business, the amount of its freight and back charges on said property, that plaintiff carried said property to defendants' stable and delivered the same to defendants in the same condition in which it received the same from the Missouri Pacific Railway company, and took defendants' receipt therefor, in good order, then plaintiff is entitled to recover the amount of freight and charges paid by it to said railway company, together with its own charges for

carrying the same to defendants' stable, if the evidence showed such charges to be reasonable.

The court refused the following instructions offered by defendants:

7. The court declares the law to be, that when defendants' buggies and other property reached the depot of the Missouri Pacific Railway company at Kansas City, and were unloaded by said railway company into its warehouse at Kansas City, the contract for the carriage of said buggies and other property referred to in the evidence, was, after holding the same for a reasonable time for the defendants to take them away, fully executed and performed, and said contract conferred on said Missouri Pacific Railway company no authority, either express or implied, to deliver said buggies and other property into the possession of the plaintiff, and conferred on the plaintiff no authority, either express or implied, to receive the same or pay the accrued charges thereon. The plaintiff was not in the line of transportation contemplated by said contract, and before it can recover for its services and the accrued charges paid by it, it must show a request from defendants to perform said services and make said payment.

8. The court declares the law to be, that the rule which permits common carriers in the line of transportation of goods consigned from one point to another, where no contract to the contrary is violated, to receive goods so consigned from a previous carrier and pay accrued charges thereon, and carry the same to their destination and there recover from the owner the amount of such accrued charges, together with its own compensation for services, does not apply to the plaintiff under the circumstances detailed in evidence in this case; the buggies and other property had reached their destination before plaintiff had any connection with them, and before plaintiff can recover for its payment of accrued charges or for its services the burden is on it to prove a request from defendants to make such payment and render such services, and no such proof having been made, the finding must be for defendants.

9. The court declares the law to be, that plaintiff, not being in the line of transportation of the goods consigned in this case, is not entitled to the benefit of rules applying to connecting carriers in the line of transportation, but its payment to the Missouri Pacific Railway company stands upon the same footing as if said payment had been made by any other person not a common carrier, and unless said payment was made at the request of the defendants, the plaintiff can not recover.

The court of its own motion, gave the following instruction: 1. The court declares the law to be, that if it appear from the evidence that in the month of February, 1881, the defendants notified plaintiff not to haul any more of their freight from the depots at Kansas City, and that plaintiff, after the giving of the said notice, did not receive or haul any more of defendants' freight until the hauling on May 12, 1881, sued for in this action, but that defendants between said time hauled their own freight from the depots in Kansas City, then plaintiff was a wrong-doer in receiving said buggies and other property of defendants from the railroad company, and it cannot recover any compensation for carrying said buggies and other property from the depot to the defendants' place of business, nor the amount of money which the plaintiff may have paid or agreed to pay the railroad company in order to get possession of said buggies and other property notwithstanding the receiving thereof by the defendants.

BRYANT & HOLMES, for the appellants.

I. When property is delivered to a common carrier, directed to the consignee at some point on the line of another carrier, it has been justly held that such a consignment amounts to a request to such carrier to forward the property to its place of destination over the lines of the necessary connecting carriers ; and to each successive carrier to pay all accrued freight charges, and consequently creates the right in the last carrier to collect the entire charges of transportation at the place of destination. *Wells v. Thomas*, 27 Mo. 17; *Briggs v. B. & L. R. R. Co.*, 6 Allen 246.

II. When property is shipped to a point on the line of a railway company, the *transit* is ended when it reaches the railway company's depot or platform at the place of destination. Unlike teamsters and truckmen, railways and carriers by water do not undertake, by receiving property for shipment, and are not required, to make delivery at the house or place of business of the consignee. The supreme court of this state and of other states, on this point, are in entire harmony with this claim. *Rankin v. R. R.*, 55 Mo. 167; *Eaton v. St. L. & I. M. R. R.*, 12 Mo. App. 386; *Deury v. R. R.*, 13 Gray 481; *Mansur v. Ins. Co.*, 12 Gray 520; *Barron v. Eldridge*, 100 Mass. 455; Hutch. on Carriers 1282.

III. The Missouri Pacific Railroad company was only bound to deliver the property to defendants at its depot in Kansas City, and when it undertook to make delivery to them at their place of business, through the plaintiff, the latter became the agent of the railroad company in making the delivery, and could only look to it for pay for his services. *Richardson v. Rich*, 104 Mass. 156; *Levi v. R. R.*, 10 Mo. App. 125.

IV. Payment of the back freight charges by the plaintiff to the railway company, having been made without any request from defendants, was a gratuitous and voluntary payment and cannot be recovered back. 1 Parsons on Contracts (5th Ed.) 471, *et seq.*

V. In hauling defendants' property without authority, plaintiff's possession thereof was wrongful, and was held as agent of the railway company, and the receipt of their property by defendants conferred no right on plaintiff to collect from defendants either the freight charges or its own charges for hauling; the one was voluntary and gratuitous, and the other as agent of the railway company. The owner of property never subjects himself to liability to another by receiving his own property from such other who had gotten possession thereof without authority. *Steamboat v. Kraft*, 25 Mo. 76; *Richardson v. Rich*, 104 Mass. 156.

LATHROP & SMITH, for the respondent.

I.   There is no doubt but that in this state the lia-
bility of the railway company changes from that of
carrier to that of warehouseman when the freight is un-
loaded from the cars into the depot, whether at the point
of destination or while awaiting delivery to a connecting
carrier; but this does not militate against plaintiff's
right as a common carrier, in the regular course of its
business to pay the charges upon such freight and hold
the consignee therefor.   Even a warehouseman to whom
the railway company might have delivered the property
for storage, would have the right to pay the charges
thereon, and the consignee would be bound to pay the
same before removing the property.   *Schneider v. Evans*,
25 Wis. 241; *Bissel v. Price*, 16 Ill. 408; *Bowman v.
Hilton*, 11 Ohio 303; *Lowenburg v. Jones*, 56 Miss. 688.

II.   If the railroad company made plaintiff its agent
to deliver defendants' property, then the plaintiff is with-
out doubt entitled to recover the freight and back charges
against said property, and the mere fact of the agent's
having accounted to its principal therefor, will not destroy
its right of recovery.

III.   But was the payment of back freight charges
voluntary and without request?   The record shows that
it was plaintiff's custom to pay such charges in the
regular course of its business, in hauling freight and that
it had been doing defendants' hauling from the depots in
Kansas City prior to February, 1881; that no notice not
to continue to haul had ever been received by plaintiff's
superintendent who had charge of its receipt and deliv-
ery of freight.   Notice of the collector of the company's
accounts was not notice to the company.   Angell and
Ames on Corp. (10th Ed.) section 307, p. 321.

IV.   Neither was plaintiff's possession wrongful.
The court must have found that no legal notice was ever
given to plaintiff to quit hauling.

V.   Defendants do not charge negligence to plaintiff
or railway company; nor that they have paid or offered
to pay the freight to anybody.   They seek to escape
liability on the ground that plaintiff had no right to pay
the freight and back charges and retain a lien therefor,

and that it had no right to haul the property to their place of business and recover compensation for such service. But the law and the facts are both against them.

Opinion by ELLISON, J.

The plaintiff as indicated by its name does a transfer business in Kansas City. The suit is brought to recover the amount of the freight bill and $1.50, in addition, for hauling from the depot to defendants' place of business. The suit is based on the idea that plaintiff is a connecting line of common carriers as contemplated by the shipment from Canal Dover to Kansas City, and as such had the right to receive the property from the Missouri Pacific Railway at the depot, paying all back charges, and transport them to the consignees' particular locality in Kansas City. A reference to plaintiff's evidence in the statement of this case clearly shows this. There is nothing to show that it and defendants ever had a business transaction prior to this. Its custom and contract with the Missouri Pacific is not shown to have any connection with defendants.

It is the law that if goods are delivered to a carrier for the purpose of being carried to a point beyond the terminus of its route, and for that purpose to be by him delivered to a connecting carrier in order to continue the carriage, or where it becomes necessary for that purpose, to make successive deliveries, from one to another upon a continuous line or succession of carriers, the first and each succeeding carrier becomes the agent of the owner of the goods, to make delivery to the next carrier. Hutchinson on Carriers, section 108.

Hence if the contract of shipment made at Canal Dover, was not fulfilled until the property was delivered at defendants' *place of business* in Kansas City, then it was plaintiff's duty to receive the goods from the railway company and transport them to defendants, and its action is well founded ; if, however, the contract was performed by the delivery of the property at the railway depot in Kansas City, then plaintiff was not a connecting

carrier and is not entitled to recover on the theory of the case upon which it was evidently instituted.

The supreme court of Missouri in the case of *Rankin v. Missouri Pacific Railway Co.* (55 Mo. 167), says: "The rule in respect to notifying consignees of the arrival of goods does not apply to railroads where the goods are delivered on time. *They are not required as carriers by wagon, to deliver at the place of business or house of consignee*, nor as carriers by water, to notify the consignee of the arrival at the wharf." And the court of appeals at St. Louis approved of the following instruction, in the case of *Eastin v. St. L. & I. M. Ry. Co.*, (12 Mo. App. 386): "You are further instructed that the delivery contemplated and required by this contract, does not mean a delivery of the merchandise at the place of business or house of the consignees in New Orleans, but rather at the depot in the city of New Orleans of the last connecting line of railroads employed by defendants to complete the carriage."

There is no question in this case as to notice, nor any question as to the arrival of the goods in the usual and ordinary time required in that distance, so as to, in case of railroads, dispense with notice; it evidently turns on the question as to what was a compliance with the contract of shipment from Canal Dover, or where was the place of delivery of the goods.

It is the duty of the carrier to deliver to the next succeeding carrier in the line of transportation to the point of destination, and if such carrier does not so deliver, it is liable. But it would hardly have been contended or thought of perhaps, if the Missouri Pacific Railway company had refused to deliver the goods to plaintiff, it would have been liable to an action for a breach of its duty as the agent of defendants under the above rules. Its duty was unquestionably performed by safely storing the goods for defendants at its depot. *Richardson v. Rich*, 104 Mass. 156.

There is nothing in plaintiff's evidence going to show any authority or right in plaintiff to haul this property or pay the freight bill, and a demurrer to the testimony

would have been properly sustained.  Defendants however throw into the case a question of fact.  They introduce evidence for the first time, tending to prove "that for some time prior to February 1, 1881, plaintiff had been in the habit of *hauling* freight belonging to the defendants from the depot in Kansas City to their place of business ; that about February 1, 1881, they notified plaintiff's collector, whose business it was to collect the accounts, that the plaintiff would be no longer authorized to *haul* defendants' freight, and not to haul any freight belonging to defendants any more.  That all freight consigned to defendants after February 1, 1881, was hauled by themselves, and no freight had been hauled by plaintiff except these goods."  This introduces into the case a question, distinct from the one discussed, viz.: the liability to pay plaintiff for the *hauling* on account of employing them to do it ; this is a different question from that of implied liability to a connecting carrier.  If plaintiff had been in the habit of hauling defendants' goods from the depot to their place of business, and defendants recognized their acts in this connection, it would, in the absence of anything further, render defendants liable for the price of the hauling in this case.  But, considering the notice to the collecting agent as insufficient to bind plaintiff, there are yet the facts of its ceasing to haul from February 1 to May 12, and defendants' hauling their own goods, which are sufficient to leave a jury at liberty to find that plaintiff had notice of the revocation of authority to haul.  There was, then, at the close of defendants' testimony, an issue of fact concerning the liability of defendants for the $1.50, charged for hauling, and that only, for there is nothing said, directly or indirectly, as to plaintiff's habit of paying bills for defendants.

From the foregoing it follows, it was error to give plaintiff's first instruction, and refusing defendants' instructions No. 7 and 9.  No. 8 was properly refused as it stands ; for it asserts there was no proof as to the hauling.  The instruction given by the court of its own motion is undoubtedly under the view that the plaintiff was a con-

necting carrier, and as such had a right to haul the goods and pay the back freight, without regard to express authority from defendants. It does not put the hypothesis of belief as to plaintiff having hauled goods prior to February 1, but it unquestionably is on the theory that plaintiff, in the absence of notice not to, had a right to transport as connecting carrier, under the implied agencies between carriers and consignees. We think plaintiff did not have the right to receive the goods and pay the back charges unless authorized so to do, disconnected from the obligation of a carrier.

The judgment is reversed and the cause remanded ; Philips, P. J., concurs ; Hall, J., dissents.

Dissenting opinion of HALL, J.

The bill of exceptions in this case contains only the tendency of the evidence, and does not contain the entire evidence. It appears from the said bill of exceptions that the plaintiff introduced evidence tending to show "that it was customary for the plaintiff as a common carrier, to pay the carrier, from which they received goods, the freight and back charges and collect the amount from the consignees, and for the consignees to put in their claims against the carriers for reclamations and damages." I agree with the majority of the court in holding that, had this been the only evidence touching the implied request by defendants of the plaintiff to render the services sued for in this case, the judgment of the circuit court should be reversed ; and I fully concur in the reasons given, in the opinion of the majority of the court, in support of such holding.

But the defendants, as shown by the bill of exceptions, introduced evidence tending to show "that for some time prior to February 1, 1881, the plaintiff had been in the *habit of hauling freight belonging to the defendants from the depots in Kansas City to their place of business.*"

Now the inference which I draw from this record-statement of the tendency of the evidence to show such a

habit, is that the habit was *in accordance with and not contrary to the custom of plaintiff in proof*.

If my inference be correct, the plaintiff had a right, implied from his habit established by the defendants' evidence, to continue in said habit, until notified by defendants to desist therefrom.   As to whether or not such notice had been given to plaintiff by defendants, was an issue of fact, which was submitted in the declarations of law given by the court.   That issue was determined by the court in favor of plaintiff.   That finding is supported by the evidence.

For these reasons I am forced, with some diffidence, but with a clear conviction of the correction of my conclusion, to dissent from the judgment of this court reversing the judgment of the circuit court, it being, as I think, for the right party.