WILLIAM B. PINDELL et al., Appellants, v. ST. LOUIS & HANNIBAL RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, March 5, 1889.

1. **Common Carrier :** DELIVERY OR NON-DELIVERY : INSTRUCTION. In a suit against a common carrier for failure to deliver a car load of wheat to the consignee, if the defendant answers with a general denial only, the issue to be tried is that of delivery or non-delivery, and no defense can be set up on a theory that the defendant had become a warehouseman of the wheat at the time of its destruction by fire. An instruction, which contemplates the admissibility of such a defense, is error.

2. **Common Carrier :** DELIVERY : PREVIOUS USAGE. Although there may have been a usage, or even an agreement, between the parties, that the defendant should deliver its consignments to the plaintiff on a certain side-track near the station, yet when the defendant placed the car of wheat on such side-track without giving any notice thereof to the plaintiff, and permitted it there to remain two days, until it was destroyed by fire, the defendant cannot discharge itself from liability upon a claim of actual delivery to the plaintiff before the fire.

3. **Instructions :** ASSUMING FACTS IN ISSUE. An instruction given for the defendant assumed that the car of wheat was "delivered" on the side-track. The fact of delivery was in issue, and the instruction was therefore erroneous.

*Appeal from the Hannibal Court of Common Pleas.*
HON. THOMAS H. BACON, Judge.

REVERSED AND REMANDED.

*Harrison & Mahan*, for the appellants.

The petition in this case alleges a failure to deliver the goods to consignee at Hannibal. The answer denies that the goods were received by the defendant. The instructions wholly ignore defendant's duty to hold the wheat a reasonable length of time for inspection, and if not called for by the consignee, to safely store the wheat. *Bell v. Railroad*, 6 Mo. App. 363 ; *Machine Co. v. Railroad*, 71 Mo. 203. Consignees should not be required to search over a city of fifteen thousand people, among the side-tracks, and places of delivery of six other common carriers, for goods shipped over defendant's line. By defendant's own showing the wheat in question was delivered to the Missouri Pacific Railway Company, and was set on a side-track dictated by the employes of the road, and in a lumber yard, a dangerous place. Under such extraordinary uncertainty, as to time and place of delivery, it was defendant's duty to notify the consignee of the time when, and the place where, such car could be found. Instructions numbers 1 and 2 given by the court of its own motion, are not based upon the pleadings. The answer does not admit the reception of the wheat, allege the transportation, and that there " was an ordinary and usual course of dealing between the parties in reference to delivery of grain in bulk by defendant, as a common carrier, to plaintiff or consignee under which plaintiff did their own unloading from a side-track where such car was left," neither did the answer allege a proper delivery, and burning of the wheat afterwards. Defendant by its pleadings simply denies that it ever received the wheat, said instructions raise an issue not in the pleadings, and are, therefore, erroneous. *Vanhooser v. Berghoff*, 90 Mo. 487 ; *Glass v. Gelvin*, 80 Mo. 297 ; *Henry v. Hinde*, 18 Mo. App. 497 ; *Moffat v. Conklin*, 35 Mo. 453.

The court erred in giving instruction number 19 asked by defendant. It assumes that there was a "delivery of the car on the side-track in question," and that there was a "proper place for delivery." Such assumption of the existence of facts will not be permitted. *Stone v. Hunt*, 94 Mo. 475 ; *Dowling v. Allen*, 88 Mo. 293 ; *Bank v. Crandall*, 87 Mo. 208 ; *Comer v. Taylor*, 82 Mo. 341.

*T. G. Case* and *James H. Orr*, for the respondent.

The rule is well settled that common carriers in this state, when goods are delivered to them on time, are not required to notify a consignee of the arrival of the same, provided the delivery was at the usual place, where the consignee has been in the habit of receiving the same. *Rankin v. Railroad*, 55 Mo. 168 ; *Gashweiler v. Railroad*, 83 Mo. 119 ; *Buddy v. Railroad*, 20 Mo. App. 209 ; *Niswanger v. Transfer Co.*, 18 Mo. App. 103. The respondent was in no manner responsible for the fire which burned the car and its contents. The whole duty of the respondents had been performed by placing the car on the side-track in question and its liability as a common carrier had ceased. The liability of the respondent as a common carrier in the shipment of wheat in bulk to the appellants terminated when the car containing such wheat was placed on the side-track, where wheat was usually unloaded by the appellants. In such cases the car so placed would be equivalent to the warehouse ; and the appellants in this case do not seek any recovery against the respondent as a warehouseman. *Railroad v. Nash*, 43 Ind. 428. The jury have found by their general verdict, that the track in question where the car burned was the usual place of delivery of wheat in bulk, consigned to the appellants. It was only the duty of the respondent to transport the car load of wheat in question within a reasonable time from Frankford, Missouri, to, and upon, the side-track

at Hannibal, Missouri, where cars of wheat consigned to
the appellants were usually unloaded ; and the law is,
that it was the duty of the appellants to see that the
car in question was unloaded as soon as it was delivered
to them.    The jury have found by their verdict that it
was delivered to them on said track.    It was not the
duty of the respondent to in any manner advise the
appellants of the arrival of such car.    Huch. on Carriers,
secs. 368, 370.    In the case at the bar, however, the
respondent showed by disputed testimony, that the
appellants were advised by telephone by respondent's
agent of the arrival of the car in question, immediately
after it reached Hannibal, Missouri, and that the same
would at once be placed upon the usual side-track ; and
the jury have so found by their verdict.    *Kightlinger
v. Eagan*, 75 Ill. 141 ; *Railroad v. Ogle*, 92 Ill. 353.
There was substantial evidence to support the ver-
dict, and the trial court committed no error in refusing
to grant a new trial upon the evidence.    This court will
not pass upon the weight of the evidence.    *Schade v.
Sharp*, 95 Mo. 579 ; *Van Horn v. Walker*, 27 Mo. App.
78 ; *Condy v. Railroad*, 13 Mo. App. 588 ; s. c., 85 Mo.
79 ; *Sellers v. Baily*, 29 Mo. App. 174.

BRIGGS, J., delivered the opinion of the court.

This is an action against the defendant as a common
carrier, for the violation of a contract of affreightment.
The petition is in the usual form, and alleges that
defendant is a common carrier, and owned and operated
a line of railway from Frankford, Pike county, Mis-
souri, to the city of Hannibal, in said state.    That on
the twenty-fourth day of February, 1887, plaintiffs
caused to be delivered to defendant at Frankford a car-
load of wheat, to be shipped and delivered to plaintiffs
in said city of Hannibal, and that defendant received
said wheat, but failed to deliver it to plaintiffs, whereby

it became wholly lost to them. Defendant admitted that it owned and operated said railroad, but denied all other·allegations.

On the trial plaintiff introduced testimony tending to prove delivery of the wheat to defendant for shipment over its said road, at the town of Frankford, on the twenty-fourth day of February, 1887, and·that defendant agreed to deliver said wheat in the city of Hannibal to plaintiffs, and that defendant had failed to so deliver it. That defendant had placed said car of wheat on a side-track, in the city of Hannibal, which belonged to the Missouri Pacific Railroad, and that while standing on the side-track, the car, together with the wheat, was burned up and totally destroyed, on the afternoon of February 27, 1887.

Defendant's evidence tended to prove that the wheat was received in the city of Hannibal on the morning of February 25. That there was no delay in the shipment, and that the wheat arrived at its destination on time. That defendant's line terminated at limits of the city of Hannibal, and that defendant's trains were brought into the city over the tracks of the Missouri Pacific Railroad, and that full car loads of freight were handled by the Missouri Pacific Railroad Company. That in the month of February, 1887, and for some time previous thereto, the plaintiffs who were engaged in the milling business in Hannibal, and had been in the habit of shipping grain over defendant's road, had instructed the defendant to place all car loads of grain to be delivered to plaintiffs on what was known as the "Badger state" side-track, belonging to the Missouri Pacific system. This side-track extended through a lumber yard, and was some distance from plaintiffs' mill, and the railroad depot or warehouse. That the car in question, on its arrival, was, by the switch foreman of the Missouri Pacific Railroad, placed on said side-track, and remained there until the afternoon of February 27,

when it, together with its contents, was destroyed by fire. That defendant did not usually notify plaintiffs of the arrival of wheat, but would sometimes do so by telephone. There was some evidence tending to prove that W. H. Pindell, one of plaintiffs, was notified, on the twenty-fifth, of the arrival of this particular car of wheat.

Plaintiffs' testimony in rebuttal was to the effect that they had no notice whatever of the arrival of the wheat. That they had telegraphed their agent in Frankford to ship a car load of wheat, but they were not advised of the fact that the wheat had been shipped. That they had no particular place for the delivery of wheat, that had been shipped over defendant's road; that they received it at different places. That they had not given defendant instructions to deliver wheat shipped to them on the "Badger state" side-track, or on any other particular side-track. Plaintiffs also introduced some evidence of a negative character, tending to. prove that the car had not been received at Hannibal on the morning of February 25.

At the conclusion of the evidence, the court at the request of plaintiffs, instructed the jury as follows :

"The court instructs the jury that it is admitted by the pleadings in this case that the defendant, the St. Louis and Hannibal Railway Company, was on the twenty-fourth of February, 1887, a common carrier of goods, wares and merchandise. Now, if the jury find from the evidence that plaintiffs, on the twenty-fifth day of February, 1887, at Frankford, Missouri, delivered six hundred bushels of wheat to defendant to be by it carried on the line of its railway to Hannibal, Missouri, and if defendant accepted said wheat as such common carrier in its cars to be carried to Hannibal, Missouri, and delivered to plaintiffs, then the court instructs the jury that the law then imposed on the defendant the duty of safely carrying the said wheat to Hannibal,

Missouri, and there delivering the same to the plaintiffs ; and if the jury further find from the evidence that defendant did not so carry said wheat to Hannibal and deliver the same to plaintiffs, but that said wheat was lost to plaintiffs, the jury will find a verdict for plaintiffs, and assess their damages at the reasonable market value of said wheat as shown by the evidence, not exceeding six hundred dollars."

On motion of defendant, the court gave the following among other instructions :

"The court instructs the jury, that if they believe from the evidence that I. N. Hostetter was authorized by the plaintiffs to purchase and caused to be shipped to them the wheat in question, and that said Hostetter acting as said agent did purchase said wheat and caused the same to be shipped to plaintiffs, on February 25, 1887, then the law is, that the knowledge of the agent of such shipment is the knowledge of his principal, and it becomes the duty of the plaintiffs to ascertain if the said car of wheat had arrived at its point of destination."

"The court instructs the jury that if they believe from the evidence that I. N. Hostetter was the agent of the plaintiffs in the purchase and shipment of the car of wheat in question, and that the plaintiffs notified .said Hostetter on, or about, February 22, 1887, to ship them said wheat, and said Hostetter did, as such agent, on twenty-fifth day of February, 1887, ship the said car of wheat to the plaintiffs, then the plaintiffs were bound in law to take notice that the said wheat had been shipped to them, and the law did not require defendant to notify the plaintiffs of the delivery of said car on the side-track in question, unless the jury find from the evidence that said car of wheat did not arrive on time at the proper place for delivery."

"The court instructs the jury as a matter of law that the burden of proof as to their claim is upon the

plaintiffs, and it is for them to prove their case by a preponderance of the evidence. If the jury find that the evidence bearing upon the plaintiffs' case is evenly balanced or that it preponderates in favor of the defendant, then the plaintiffs cannot recover, and the jury must find for the defendant.''

The court on its own motion gave the following instructions :

"In lieu of instructions asked by defendant, the court of its own motion instructs the jury that if from the evidence they find that previous and up to the time of the shipment of the grain in question there existed an ordinary and usual course of dealing between the parties herein, in reference to the delivery of grain in bulk by defendant, as a common carrier, to plaintiffs as consignees, under which plaintiffs did their own unloading, and that under and by virtue of such course of dealing, if any, it was the usage between said parties to deliver grain in bulk in the car, by leaving such cár on a sidetrack, if any, usually used by said parties for said purpose, and that the grain in controversy was so shipped to plaintiffs, and that the said grain was on time so deposited in good order on said side-track in said car, and that then and there said grain safely remained reasonably long enough after its said arrival to enable plaintiffs to inspect said freight, then such and said deposit and remaining of said car of grain on said track became and was a delivery of said grain to plaintiffs, although no notice of said arrival was given, and if the jury so find said delivery the jury will find for the defendant.''

"The court of its own motion instructs the jury that if they find from the evidence that the grain in controversy was delivered to and received by defendant for shipment to plaintiffs, and that after transportation, but before being removed from car on said track, the

said grain was destroyed by fire, then the burden of proof is devolved upon defendant to show a delivery of said grain to plaintiffs before said fire."

The case was submitted to the jury on the foregoing instructions which resulted in a verdict for defendant and the plaintiffs bring the case, to this court, by appeal.

The evidence in the case leaves no doubt of the delivery of the wheat in controversy to defendant by plaintiffs' agent, and an undertaking on part of defendant to transport the grain to Hannibal and there deliver it to plaintiffs. The burden then rested on defendant to show a delivery to plaintiffs in accordance with its undertaking. Under defendant's answer, it could not show by way of defense, or for the purpose of relieving itself of the liability of a common carrier, that plaintiffs were not present to receive the wheat at the time of its arrival, and that after a reasonable time, defendant had placed the car in a reasonably safe place in charge of its servants, and that by reason of these facts defendant held said wheat in the capacity of a warehouse-man. If such a defense had been relied on, it should have been specially pleaded. It follows that the defense in this case must be confined to the question, of " delivery, or no delivery."

It has been held in this state that if goods shipped on railroads arrive at their destination on time, then the carrier is under no legal obligation to notify the consignee of their arrival. But the company may, after the expiration of a reasonable time, either unload the goods and place them in its warehouse, or if the goods are in bulk and full car-load lots (such as grain), which cannot readily be unloaded and stored, then the company may place the car in a reasonably safe place under the direct charge and care of its servants, and when this is done, the liability of the railroad company is changed from that of a common carrier, to that of a warehouse-man. To that extent, and to that alone, have the courts

of Missouri dispensed with notice to the consignee. *Rankin v. Railroad*, 55 Mo. 168 ; *Gashweiler v. Railroad*, 83 Mo. 119 ; *Buddly v. Railroad*, 20 Mo. App. 209 ; *Transfer Co. v. Neiswanger*, 18 Mo. App. 103 ; *Bell v. Railroad*, 6 Mo. App. 363 ; *Wilson Machine Co. v. Railroad*, 71 Mo. 203. But as we have shown the question as to whether defendant held the wheat at the time of its destruction as a common carrier or warehouseman does not arise. The only possible defense made by defendant's testimony, was an absolute delivery of the wheat to plaintiffs on the twenty-fifth, two days before its destruction by fire. Yet the defendant's instructions seem to present the former defense. If defendant's counsel did not so intend, then instruction number 21 certainly declares as a matter of law, because a shipper of freight has, or is presumed to have, notice of the time of its arrival at the place of destination, and fails to be present to receive it, that the carrier would then have the right to make such disposition as it pleased of the goods, and by so doing relieve itself of all liability, either as common carrier or warehouseman. In either view the instruction was wrong and cannot be upheld. Instruction number 19 is fatally defective, because it assumes as a matter of fact that the delivery of the car of wheat on the "Badger state" side-track, was an *actual delivery to plaintiffs*. The instructions assume *that fact* to be *true*, which is the *very* question in this case.

Instruction number 13 is wrong, but the error was cured by instruction number 2, given by the court of its own motion.

While a carrier may, without notice to the consignee, after the arrival of the goods, change his relation to the goods from that of a common carrier to a warehouseman, yet the duty remains with the carrier to *actually deliver* the goods to the consignee, and it is the duty of the carrier to make reasonable efforts to *find* the owner, and if the liability of a common carrier still

exists, and the goods are delivered to the wrong person, the carrier under any circumstances, is liable to the true owner for the value of the property. If the carrier holds the goods in the capacity of a warehouseman, and there is a wrong delivery, then the carrier is not liable except for actual negligence. But in any case, an absolute and actual delivery must be made or a state of facts must be pleaded and proved which excuse a failure of delivery. In the case at bar defendant says that when it placed the car on the "Badger state" side-track, that this was an actual delivery to plaintiffs. The usual place for the delivery of freight by a railroad company, is the depot or freight warehouse. But usage and custom between the shipper and carrier may have established another and different place of delivery, or parties may stipulate for the delivery of the goods elsewhere. The instruction given by the court of its own motion presents this view, but the instruction is fatally defective, in failing to require defendant to *notify* plaintiffs, that the car had been *placed* on the side-track. We confidently assert, that the principle cannot be maintained, that because plaintiffs had been in the habit of receiving freight shipped over defendant's road on this particular side-track, or had instructed defendant to so deliver all goods shipped to them; that defendant could place the car of wheat in question on the side-track, and without any notice whatever to plaintiffs, treat this as a complete delivery, and thereby relieve itself of all further liability, either as a common carrier or warehouseman. If that was the law there would be no protection to consignees after the arrival of freight at its destination. Plaintiffs and defendant by a course of dealing, or by express agreement, could dispense with such notice of delivery, but that view was not presented by the instructions.

It follows that the judgment in this case must be reversed and the cause remanded. The other judges concur.