WILLIAM H. PINDELL *et al.*, Appellants, v. THE ST. LOUIS AND HANNIBAL RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, April 29, 1890.

1. **Common Carriers:** DELIVERY TO CONSIGNEE. A common carrier ceases to be liable as such, and assumes only the liability of a warehouseman, if, after the arrival of the goods carried at their destination, he notifies the consignee of their arrival and places them in a reasonably safe place, regard being had to their character, to await the action of the consignee in taking actual possession of them. It is not necessary that the carrier should in such case notify the consignee of the place of the storage of the goods, but only that there should be such notice of the arrival of the goods, and that the carrier should hold itself ready to inform the consignee of the place of storage upon application therefor.

Pindell v. The St. Louis & Hannibal Ry. Co.

2. ———: ———. But if, at the time of the arrival of such goods, there was in force a prior understanding between the consignee and the carrier that all consignments to the consignee, of the kind of the one in question, should upon their arrival be placed upon a certain car track for the consignee by the carrier, then it will be sufficient for the carrier to so place the same and notify the consignee thereof, whether such place be a reasonably safe one or not.

3. Practice, Appellate : ERROR IN FAVOR OF THE APPELLANT. An appellant is not in a position to complain of a ruling which is erroneous, because too favorable to him.

*Appeal from the Hannibal Court of Common Pleas.*
HON. THOS. H. BACON, Judge.

AFFIRMED.

*Harrison & Mahan*, for appellants.

*Theodore G. Case* and *J. H. Orr*, for respondents.

THOMPSON, J.—This case was before this court on a former appeal, and the decision of this court is reported in 34 Mo. App. 675. On its being remanded to the circuit court in pursuance of the mandate of this court, the defendant filed an amended answer in that court, setting up the special defense upon which it has chiefly relied. So much of this amended answer as it is material to recite is as follows: "That, on the twenty-fifth day of February, A. D. 1887, the plaintiffs delivered to the defendant at Frankford, a station on defendant's railway, in the state of Missouri, the said carload of wheat consigned to the plaintiffs, to be transferred over its railway to the city of Hannibal, in the state of Missouri ; that the defendant forwarded the carload of wheat to, and it was received in, the said city of Hannibal, on the morning of February 25, A. D. 1887 ; that there was no delay in the shipment, and that the said carload of wheat arrived at its destination on time ; that defendant's line terminated at the limits

of the city of Hannibal, and that defendant's trains were brought into the city of Hannibal over the tracks of the Missouri Pacific Railway Company, and that full carloads of freight, such as that referred to in plaintiffs' complaint herein, were carried and distributed in the city of Hannibal by the Missouri Pacific Railway Company. That in the month of February, A. D. 1887, and for some time previous thereto, plaintiffs were engaged in the milling business in Hannibal, and were in the habit of shipping grain from various points on defendant's road to themselves at Hannibal, and instructed the defendant to place all carloads of grain consigned to plaintiffs on what was known as the "Badger State" sidetrack, belonging to the Missouri Pacific Railway Company, in the city of Hannibal. That this sidetrack extended through a lumber yard, and was a short distance from the plaintiff's mill, and that the car in question, on its arrival, was by the Missouri Pacific Railway Company, acting for and on behalf of the said defendant, placed on said sidetrack, and remained there until the afternoon of February 27, A. D. 1887, when it, together with its contents, was destroyed by fire. That defendant did not usually notify plaintiffs of the arrival of carloads of wheat consigned to them over its road. That the defendant did forthwith, upon the arrival of said carload of wheat, notify the plaintiffs of the arrival of said carload of wheat, and that it would be at once placed on the said sidetrack. Defendant further says that the plaintiffs were not present to receive the said carload of wheat at the time of its arrival in the said city of Hannibal, and, within a reasonable time after the arrival of said carload of wheat in the said city of Hannibal, the defendant caused the said carload of wheat to be placed in reasonably safe place, to-wit, upon said sidetrack, in charge of its servants ; and defendant avers that by reason of these facts it thereafter held the said carload of wheat in the capacity of a warehouseman."

At the trial the evidence adduced by the plaintiffs was substantially the same as on the former trial, and the defendant gave evidence tending to support the allegations above quoted from its amended answer. The case was submitted to the jury on sufficiently full instructions, and, as on the former trial, they returned a verdict for the defendant. The plaintiffs again appeal, and submit the cause on three assignments of error.

I. The first assignment of error is that the court erred in permitting the alleged testimony of a deceased witness, M. P. Gregg, preserved in the bill of exceptions taken at the former trial, to be read in evidence, against the objection of the plaintiffs. Notwithstanding the statement to the contrary in the appellant's abstract, we find, on an inspection of the record, that no exception was saved to this ruling.

II. The next assignment of error is that there was no evidence that the plaintiffs received actual notice that the carload of wheat had been placed by the Missouri Pacific Railway Company, which acted as the agent of the defendant, on the sidetrack known as the "Badger State" sidetrack; or that, if there was any evidence of this fact, the preponderance against it is so great that the verdict must be regarded as a manifest mistake on the part of the jury, under the rule in *Rosecrans v. Railroad*, 83 Mo. 678. It may be worth a passing observation that this is the second jury that has returned a verdict for the defendant in this case. In all the litigation in which railway companies have been parties, which has been before this court during the more than nine years that I have been a judge of it, this, so far as I can now recall, is the *fourth* verdict which a jury has freely given in favor of a railway company. If the jury has given this verdict on a state of evidence which clearly shows that it was the result of prejudice or partiality, within the doctrine of the case just referred to, it is a remarkable circumstance. We

find, on examining the record, that the conclusion of the jury upon this point is well supported by the evidence. The testimony of the deceased witness, Gregg, who was auditor of the defendant railway company, is to the effect that the carload of wheat in question arrived at Hannibal at 10:20 o'clock in the morning; that, about five minutes after the train came in, the witness was called up though the telephone by Mr. Pindell, one of the plaintiffs, who inquired whether the witness had seen anything of a car of wheat; that the witness told him that they had but one that morning. The witness thought he mentioned the number of the car, number 42. The witness told him that the car would be sent over right away to his place of receiving freight. Further on, the witness states that he thinks the words which he used were that he would have it set over on the plaintiff's track. The witness did not know where that track was, nor that the car was so set over. Other witnesses, however, testified that the car was so set over. Three other witnesses for the defendant testified, in distinct and positive terms, that an arrangement had been made with the plaintiffs a considerable time prior to the accident—one of them states about three months, another places the commencement of it in the previous month of January,—whereby carloads of grain consigned to plaintiffs should be placed on the "Badger State" track. The testimony of these witnesses goes into the matter in detail, and states the reasons given by Mr. William H. Pindell, one of the plaintiffs, who made the request, for fixing the place of delivery on that track. The "Badger State" track ran through a lumber yard, and the evidence tends to show that, about fifty-two hours after the carload of wheat in question had been thus placed on that track, it was consumed, in consequence of a fire in the lumber yard, for which the defendant was in nowise responsible. It is quite clear, from this statement, that there is no principle on

which an appellate court can interfere with the verdict on the ground that it fails to show notice to the plaintiffs by the defendant that the car would be placed there. The mere fact that Mr. Gregg, the defendant's auditor, did not know what was the usual place of depositing the carloads of wheat which came consigned to the plaintiffs is immaterial, since the evidence shows that the plaintiffs did know what the place was, and that the agents and servants of the defendant and of the Missouri Pacific Railway Company, which had charge of the matter, also knew it.

We do not, however, regard the finding of the jury, in favor of the defendant, of the fact that the defendant gave notice to the plaintiffs that the car had been placed on the "Badger State" track, as the finding of a fact *necessary* to the defense, for reasons which we shall state in speaking of the instructions.

III. Complaint is made of the rulings of the trial court in giving and refusing instructions. In order to understand this assignment of error, we shall set out the principal instructions which were given and refused.

The following instruction, number 1, was requested by the plaintiffs, and refused by the court in the form in which it was requested:

"The court instructs the jury that it is admitted by the pleadings in this case that the defendant, the St. Louis and Hannibal Railway Company, was, on the twenty-fourth day of February, a common carrier of goods, wares and merchandise; and it is also admitted by the pleadings that defendant, as such common carrier, accepted and received of plaintiffs at Frankford, Missouri, on the twenty-fifth day of February, 1887, six hundred bushels of wheat, to be by said defendant carried on the line of its railway, in its cars, as such common carrier, to Hannibal, Missouri, and delivered to plaintiffs. Now, the court instructs the jury that the law then imposed on the defendant the duty of safely

carrying the said wheat to Hannibal, Missouri, and there delivering the same to plaintiffs, and if the jury find from its evidence that the defendant did carry said wheat to Hannibal, Missouri, but did not deliver the same to plaintiffs, but the said wheat was lost to plaintiffs, the jury will find a verdict for plaintiffs, and assess their damages at the reasonable market value of said wheat, as shown by the evidence, not exceeding the sum of six hundred dollars.''

In lieu of this instruction the court, of its own motion, gave the following :

'' The court, in lieu of instructions asked by plaintiff, of its own motion, instructs the jury that it is admitted by the pleadings in this case that the defendant, the St. Louis and Hannibal Railway Company, was, on the twenty-fourth day of February, 1887, a common carrier of goods, wares and merchandise ; and it is also admitted by the pleadings that the defendant, as such common carrier, accepted and received of plaintiffs, at Frankford, Missouri, on the twenty-fifth day of February, 1887, six hundred bushels of wheat, to be by said defendant carried on the line of its railway in its cars, as such common carrier, to Hannibal, Missouri, and delivered to plaintiffs. Now, the court instructs the jury that the law then imposed on the defendant the duty of safely carrying the said wheat to Hannibal, Missouri, and there delivering the same to the plaintiffs ; and if, under the instructions herein, the jury find from the evidence that there was no delivery, and no state of facts dispensing with delivery of said wheat, the jury will find for the plaintiffs, and assess their damages at the then reasonable market value of said wheat, not exceeding the sum of six hundred dollars.''

What state of facts would not dispense with delivery, the court explained to the jury in the following instruction, given of its own motion :

'' In lieu of instructions asked by plaintiffs, the court of its own motion instructs the jury that, although

from the evidence they may find that the wheat in question arrived on time in good order at its destination in defendant's hands, yet, unless from the evidence they further find that, twenty-four hours before the burning of said wheat, the defendant gave plaintiffs, or one of plaintiffs, actual notice of said arrival of the said wheat, the jury will find that there was neither a delivery, nor any state of facts dispensing with a delivery, of said wheat to plaintiffs."

The court also gave the two following instructions requested by the plaintiffs :

"2. The courts instructs the jury that, if they find from the evidence that the freight in question received by defendant at Frankford, Missouri, for transportation to Hannibal, Missouri, was grain in bulk, to-wit, wheat, consigned to plaintiffs at Hannibal, Missouri, then it was the duty of defendant to transport and deliver the same to said consignee, to-wit, plaintiffs, at Hannibal, Missouri ; and it was the duty of defendant to give plaintiffs twenty-four hours' actual notice of the arrival and placing of said bulk wheat, so contained in said car number 42, on the "Badger State" side-track, said twenty-four hours to embrace such time as the car number 42, containing such bulk wheat, was placed and kept on said sidetrack by defendant ; and unless the jury find from the evidence that defendant did give plaintiffs said actual notice twenty-four hours before the burning of said car and wheat, they will find a verdict for plaintiffs.

"3. Although the jury may find from the evidence that the defendant, after receiving said carload of bulk wheat, safely transported it to Hannibal, Missouri, and there placed the car containing said wheat on the "Badger State" sidetrack, and although they may further find from the evidence that said carload of wheat was afterwards burned on said sidetrack, and that said defendant was not chargeable with such burning, yet, unless the jury further find from the evidence that

defendant notified plaintiffs of the placing of said carload of wheat on said "Badger State" sidetrack twenty-four hours before said carload of wheat was so burned, then the jury will find a verdict for plaintiffs."

The court gave several cautionary or admonitory instructions requested by the defendant, which are not complained of ; and it also gave of its own motion the following instruction, in lieu of other instructions requested by the defendant:

"1. In lieu of instructions prayed by defendant, the court of its own motion instructs the jury that, if from the evidence they find that, upon the arrival of the wheat in question, it was deposited and kept in good order, in a reasonably convenient and proper place for unloading, and thereafter and twenty-four hours before the loss or destruction of said wheat, the defendant gave to plaintiffs or to one of plaintiffs actual notice of said arrival, then said arrival, deposit, safekeeping and expiration of said notice, if any, terminated defendant's liability as a common carrier ; and if from the evidence the jury further find that thereafter the defendant had said wheat in a reasonably safe place and exercised such care in the preservation of said wheat as a person of ordinary prudence would administer in charge of his own affairs in behalf of the owner, under the same circumstances, the jury will find for the defendant, although the said wheat in car on track was lost or destroyed.

"2. The court, of its own motion, instructs the jury that the burden of proof rests upon the defendant, to show, by a preponderance of the evidence, to the reasonable satisfaction of the jury, either a delivery of the wheat to plaintiffs, or a state of facts dispensing with the said delivery."

"The burden of proof to establish the measure of damages, if any, is on the plaintiffs."

In considering the propriety of these rulings upon the instructions, it is to be borne in mind that the issue

on the present trial was not merely delivery or no delivery, as was the issue on the previous trial, as stated by this court in its previous opinion.  34 Mo. App. 675. An analysis of that portion of the amended answer above quoted shows that it tendered two hypotheses, in addition to the general denial: *First.*  That, when the carload of wheat arrived, the defendant placed it on the "Badger State" track, where, by a previous agreement with the plaintiff, it was its duty to place it, and notified plaintiffs that it had arrived, and that it had been placed on said track. *Second.*  That when it arrived they notified the plaintiffs of its arrival, and placed it in a reasonably safe place, by reason of which fact their liability was changed from that of a common carrier to that of a warehouseman, so that they were not answerable for the accidental destruction of the wheat by the fire.

The first complaint of the plaintiffs in respect of the instructions is that the court refused the plaintiff's instruction number 1, as requested, and gave in lieu of it, of its own motion, the instruction above quoted. There was plainly no error in refusing the plaintiff's instruction number 1, as tendered, because the issue on the present trial was not, as on the former trial, the mere issue of delivery or no delivery; but the defendant had pleaded a state of facts, which, if true, might be regarded as dispensing with a delivery, or which might be regarded as being in themselves a delivery,—the difference being a mere matter of legal phraseology. Under this state of the issues, it would plainly have been misleading to submit the case to the jury on an instruction, requiring them to find for the plaintiffs if there had not been a delivery, without explaining to them what facts would constitute a delivery, or what facts would dispense with, or be tantamount to, actual delivery.  The first instruction, which the court gave in lieu of this, rightly told the jury that they must find for the plaintiffs, if there was no delivery and no state

of facts dispensing with a delivery. The second instruction, drawn and given by the court of its own motion, if it was intended to explain to the jury what state of facts would dispense with a delivery, failed of that object and to that extent was defective. It was, however, good and favorable to the plaintiffs, as far as it went; for it told the jury that, unless the defendant gave the plaintiffs actual notice of the arrival of the wheat, they should find that there was neither a delivery nor any state of facts dispensing with a delivery. This is in accordance with the opinion of this court on the former appeal, so far as it goes. But it is not true as matter of law, nor does the instruction say that it is, that the carrying of goods to their destination, and the notifying the consignee of their arrival, is tantamount to an actual delivery, or will dispense with a delivery. As shown by the opinion of this court on the former appeal, the carrier must do more; he must place the goods in a reasonably safe place, regard being had to their character, to await the action of the consignee in taking actual possession of them, in which case his liability ceases to be that of a carrier and becomes that of a warehouseman or of an ordinary bailee for hire. If the instructions on this point had stopped here, it may be that they would have required a reversal of the judgment. But this duty of the carrier was fully explained to the jury in the first instruction (also quoted above), given by the court in lieu of instructions asked by the defendant. So far as this question goes, then, the incompleteness of the instruction under consideration was fully supplemented by the one last referred to, which was the very next instruction in the series, though not the next as above copied. It is not the law, as is argued by the counsel for the plaintiff, that, in order to exonerate itself from this liability as a common carrier, it was the duty of the defendant, not merely to give the plaintiffs notice of the arrival of the wheat, but also to give them notice of its arrival and of

the place where it had been deposited. No such rule of law was declared by this court. If, when the wheat arrived, the defendant notified the plaintiffs of its arrival, and thereupon placed it in a reasonably safe place to await the action of the plaintiffs in taking possession of it, holding itself ready to inform the plaintiffs, upon application, of the place where it was, they thereafter held it as warehousemen, and were not liable for its accidental destruction by fire, without negligence on their part. If, on the other hand, in pursuance of a previous arrangement with the plaintiffs, the defendant had engaged that all carload consignments of wheat for the plaintiffs should, on their arrival at Hannibal, be placed on the "Badger State" track, and when this carload arrived it was placed on that track, and the defendant notified the plaintiffs that it had so arrived *and had so been placed*, then it was exonerated in respect of its liability as a *common carrier*, irrespective of the fact whether the "Badger State" track was a reasonably safe place or not. In other words, if the plaintiffs had directed the defendant to put it there, it makes no difference whether it was a reasonably safe place or not, so far as the liability of the defendant was concerned, provided it gave the plaintiffs notice of the facts that it had been put there.

On this point the instructions were more favorable to the plaintiffs than they were entitled to ask. The second and third instructions requested by the plaintiffs and given by the court (above set out) informed the jury that they must find for the plaintiffs, unless the defendant gave the plaintiffs notice of the arrival of the wheat, and of its being placed on the "Badger State" track twenty-four hours before it was burned. It is argued that these instructions are contradictory of the instructions given by the court in lieu of instructions requested by the defendant. This is true; but the error was an error in favor of the plaintiffs, and they are, therefore, not in a position to complain of it. They

ignored entirely the second hypothesis contained in the defendant's amended answer, and required the jury to find for the plaintiffs, although it might be a fact that, when the carload of wheat arrived, the defendant notified the plaintiffs of its arrival, and then placed it on the "Badger State" track, which track may have been a reasonably safe place for its deposit. Whether it was so or not was, of course, a question for the jury. The only substantial error, which we see in the frame of these instructions, consisted in the giving of the second and third instructions requested by the plaintiffs without the qualification above named. If the plaintiffs had recovered, instead of the defendant, their judgment must for this reason have been reversed.

The judgment will be affirmed. It is so ordered. All the judges concur.