THE MISSOURI PACIFIC RAILWAY COMPANY V. THE WICHITA WHOLESALE GROCERY COMPANY.

1. COMMON CARRIER—*What Constitutes.* A railroad company, taking loaded cars from its connection with another railroad, and transferring them by means of a switch-engine over a portion of its own track to a spur of its own, and receiving its compensation from the connecting road, acts as a common carrier, and is liable as such for the safety of the goods transported, no matter how short the distance from the place of receipt to that of delivery.

2. CASE, *Followed.* The rule declared in the case of *Railroad Co. v. Maris,* 16 Kas. 333, that, " The extraordinary liability of a railroad company as carrier of goods extends, not merely to the termination of the actual transit of the goods to the place of destination, but also until the consignee has a reasonable time thereafter to inspect the goods and remove them in the usual hours of business, and in the ordinary course of business," reaffirmed, and *held* to apply to the facts in this case.

3. BURNING OF WAREHOUSE—*Liability of Carrier.* A railway company which seeks to be relieved from liability as a common carrier by reason of a special contract made by a connecting carrier, must plead such special contract, and cannot, under an answer denying generally the averments of the plaintiff's petition which alleged liability as a common carrier, introduce evidence showing a special contract with the connecting carrier, especially where it maintains throughout the trial that it never assumed the relation of a carrier to the property, for the loss of which the plaintiff seeks to recover.

*Error from Sedgwick Court of Common Pleas.*

ON the 26th of September, 1889, *The Wichita Wholesale Grocery Company* commenced its action against *The Missouri Pacific Railway Company,* alleging, among other things, that on the 20th of April, 1889, the railway company was a common carrier, operating a railway in and through the city of Wichita, in this state ; that it received on that date two car-loads of sugar of the value of $6,252.50, from the St. Louis & San Francisco Railway Company, in the city of Wichita,

at the point of intersection of that railroad with the railway of the defendant, to be transported and delivered to the grocery company in Wichita for a valuable consideration paid by such company; that the railway company failed and neglected to transport and deliver the sugar to the grocery company as it undertook and agreed to do, and that thereby the grocery company lost the sugar, to its damage in the sum of $6,252.50, for which the grocery company demanded judgment. Trial had before the court with a jury April 28–30, 1890. The jury returned a verdict for the grocery company for $6,531.25, and also made special findings of fact.

The following, among other facts, were proved upon the trial: On or about the 26th of July, 1889, the two car-loads of sugar for which this action was brought, were transported to the city of Wichita by the St. Louis & San Francisco Railway Company. This sugar was consigned by the Louisiana Sugar Refining Company to the Wichita Wholesale Grocery Company, and was transported from New Orleans to Paris, Tex., over the Texas & Pacific railroad, and from that point to Wichita over the Frisco railroad. Under the contract for the shipment of this sugar, the two roads named were to transport it from New Orleans to Wichita, and deliver it to the Wichita Wholesale Grocery Company. The building occupied by the grocery company at Wichita fronted upon Water street, and extending from Water street west to an alley. About two years prior to the loss of the sugar complained of, a spur-track had been constructed by the Missouri Pacific Railway Company in the alley at the rear of the building occupied by the grocery company. This track connected with a switch of the railway company. Upon the spur-track at the rear of

the store all cars containing goods for the grocery company were placed, when delivered at the building or store of the company. At the intersection of the Santa Fe railroad and the Missouri Pacific railway at Wichita a Y had been constructed. The Frisco road at Wichita was connected with the Santa Fe road, and had the use of the Y. The place of business of the grocery company was about a mile distant from the Frisco road, and it was the practice of that railroad company when it brought goods to Wichita, which it was to deliver to the grocery company at its building or store, to place the cars upon the Y in question, and then notify the agent of the Missouri Pacific Railway Company that the cars were on the Y to be placed on the spur-track. The switch-engine would then be sent to the Y where it would get the cars and place them upon the spur-track at the rear of the building or store of the grocery company, the St. Louis & San Franciso railway paying the switching charges. The cars containing the sugar arrived at Wichita on Saturday afternoon, the 27th of July, 1889, over the Frisco railroad. After the cars reached Wichita, the agent of the Frisco road notified the grocery company that the cars were there, and was instructed by that company to place them on the Y. The cars were placed upon the Y late on Saturday night. The Missouri Pacific Railway Company was notified that the cars were on the Y, and within the usual time sent its switch-engine to the Y and switched the cars upon the spur-track at the rear of the building of the grocery company. This was on the afternoon of Sunday, the 28th of July. The cars were placed upon the spur-track at exactly the same point they had always been placed under similar circumstances. The grocery company was in the habit of permitting

the cars to stand on the spur-track from one to three days before unloading. The Missouri Pacific Railway Company never unloaded the cars or broke the seals. Cars had been placed in the same manner on the same spur-track on a previous Sunday, but it does not appear that plaintiffs ever broke the seals, unloaded any freight, or exercised any actual control over such cars except during business hours of business days. Some time on Monday morning of the 29th of July, the store-building of the grocery company and the two car-loads of sugar were burned. It is not claimed that the Missouri Pacific Railway Company was in any manner responsible for this fire, or that it was in any manner negligent concerning the same. Subsequently judgment was rendered upon the verdict in favor of the grocery company and against the railway company for $6,531.25 with costs. The *Railway Company* excepted, and brings the case here.

*J. H. Richards*, and *C. E. Benton*, for plaintiff in error.

*J. D. Houston*, and *W. E. Stanley*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: Three principal questions are presented by the record which include all the various matters discussed in the briefs, and will be all it will be necessary for us to consider.

I. Did the defendant company incur the liability of a common carrier under the facts of this case? The sugar was consigned by the Louisiana Sugar Refining Company at New Orleans to the plaintiff at Wichita, and transported over the Texas & Pacific and St. Louis

& San Francisco railroads to Wichita. It was there placed on the Y, and switched by the Missouri Pacific road over its track to the spur-track at the rear of plaintiff's warehouse. For these services the defendant was paid by the St. Louis & San Francisco Railway Company $2 per car-load. All railway corporations are by statute made common carriers, and required to transport persons and property, as such, for all persons alike. (Gen. Stat. of 1889, ¶ 1212.) The distance over which freight is hauled, whether in car-load lots or in less quantities, whether in its own cars or those belonging to connecting carriers, can make no difference with the capacity in which the company acts. A railroad transporting a passenger or a car-load of freight one mile, using a switch-engine for motive power, is just as much a common carrier as if the distance were a thousand miles by regular freight- or passenger-train. The fact that compensation for this particular service was paid by the St. Louis & San Francisco Railway Company, while it might render that company also responsible, could not relieve the defendant company from its liability as a carrier. The defendant company was bound to receive and transport this merchandise as a common carrier, and there is nothing in the facts of the case showing that it did receive it in any other capacity.

II. Did the defendant deliver the sugar to the plaintiff? It is earnestly insisted that when the railroad company placed the cars at the rear of the plaintiff's warehouse, at the exact place where the plaintiff was accustomed to receive and unload its freight, it had performed its whole duty, and that from the time it uncoupled its engine from the cars the property was in the possession of the plaintiff, and at its risk. It is shown that the plaintiff was accustomed to break the seals of

34—55 KAS.

the cars so placed, and remove the freight without the presence of, or special permission from, any employee of the railway company. And it is claimed that under these circumstances the defendant had fully performed all the services it undertook to perform, and was discharged from all further liability. There are authorities which give some support to this contention. (*Gregg v. Ill. Cent. Rld. Co.*, 147 Ill. 550; *P. & P. U. Rly. Co. v. Rolling Stock Co.*, 49 Am. and Eng. Rld. Cases, 81; *Independence Mills Co. v. B. C. R. & N. Rly. Co.*, 34 N. W. Rep. [Iowa] 320.) We think, however, that the facts of this case fail to show a delivery of the sugar to the plaintiff. It is true that the cars were placed in the proper position for unloading, and that the plaintiff was privileged to proceed to take out the sugar as soon as it pleased to do so. But the cars were so placed on Sunday. They were consumed by fire before business hours on Monday morning. The plaintiff was under no obligation to work on Sunday, nor was it bound to receive goods in the night time, especially as it is not shown that it was accustomed to do so. The property remained in the custody of the railroad company until the plaintiff could reasonably be required to receive it. In the case of *L. L. & G. Rld. Co. v. Maris*, 16 Kas. 333, it was held, that —

"The extraordinary liability of a railroad company as a carrier of goods extends not merely to the termination of the actual transit of the goods to the place of destination, but also until the consignee has a reasonable time thereafter to inspect the goods, and remove them in the usual hours of business and in the ordinary course of business."

In the opinion in that case the cases holding a different doctrine are referred to, but the court declined to follow them, deeming the better rule to be the one announced, and also that it was best supported by au-

thority. We still adhere to the rule laid down by this court, and think it sustained by the best-considered recent cases. ( *Schen v. Benedict*, 116 N. Y. 510 ; *Pindell v. Railway Co.*, 34 Mo. App. 675 ; *Railroad Co. v. Commercial Bank*, 123 U. S. 727.) At the time the sugar was burned it was in the cars in which it was placed by the consignor on the track belonging to the defendant, where it was placed by its employees. The plaintiff had never in any manner taken actual charge of it, nor would it in the usual course of business open its warehouse or be ready to receive it until some hours after it was destroyed. It is not claimed that the defendant did actually deliver the sugar out of the cars to plaintiff. It cannot make a constructive delivery except at a time when the plaintiff might reasonably be required to receive it, and that could only be during business hours of a business day, where there was no custom or agreement to receive at any other time.

III. Original bills of lading issued by the Texas & Pacific Railway Company to the consignor, under which it is claimed that not only the receiving company but all connecting carriers were exempted from liability for loss by fire, were offered in evidence by the defendant. The court excluded them. We think they were inadmissible under the pleadings in this case. The allegations of the petition were that the sugar was delivered to the defendant by the St. Louis & San Francisco Railway Company at the point of intersection of the railroads at Wichita, to be transported to the plaintiff at Wichita, and that the defendant failed to deliver. The answer consisted, *first*, of a general denial, and, *second*, of an allegation that the plaintiff's loss, if any, occurred by reason of its own negligence. The contract for shipment from New Orleans to Wichita was

not mentioned in the pleadings nor drawn in issue in the case. It was, therefore, irrelevant and inadmissible. There is much comment by counsel on the instructions, but we think no other substantial question is presented in the case. Although there would seem to be a very great hardship in imposing on the defendant, which has received but $4 for its services, a liability for a loss of $6,531.25, that liability arises from a rigid but well-established rule of the common law governing the transportation of property by common carriers, which we are not at liberty to abolish or modify.

The judgment is affirmed.

All the Justices concurring.