THE ATCHISON TOPEKA & SANTA FE RAILROAD COMPANY v. G. L. DITMARS *et al.*

NO. 65.

1. CASE MADE—*Service—Settlement.* The affidavits filed in this case bring it within the rule laid down in *Bank of Claflin v. Rowlinson*, 2 Kan. App. 82.

2. RES JUDICATA—*Motion to Dismiss.* Where the supreme court has overruled a motion to dismiss a case, the courts of appeals will not sustain such a motion.

3. INJURY TO STOCK—*Statute Applied.* If the railroad company is not liable in this case as a common carrier, its liability is defined by paragraph 1250 of the General Statutes of 1889, and under this statute it is necessary for the plaintiff to allege and prove the negligence of the company and the damages resulting therefrom.

4. DEMURRER—*Not Very Explicit Evidence Sufficient.* The evidence need not be very explicit to sustain the action of the court in overruling a demurrer to the evidence. If there is any evidence which fairly tends to establish the material allegations necessary to a recovery it is sufficient. (*K. P. Rly. Co. v. Couse*, 17 Kan. 571.)

5. INJURY TO STOCK—*Sufficient Showing of Negligence.* The showing of negligence of the railroad company and the damages to the cattle resulting therefrom is sufficient to sustain the judgment rendered in this case.

6. —— *Possession and Control of Company.* While cattle are being shipped by a railroad company over its road they are in the possession and under the control of said railroad company, and not of the owner or his employees.

7. —— *Necessary Pleading and Proof.* If the railroad company desires any relief from any contract which may have been entered into it should plead and prove the contract.

8. —— *Negligence—Proper Instruction.* Where the undisputed evidence of the plaintiffs shows that the employees of the railroad company in switching bumped the cars and knocked the cattle off their feet and threw them down, and that this occurred several times, it is not error for the court to instruct the jury that "evidence was introduced tending to show that the trains were shifted about and bumped the cars in a needless manner; that is to say, in such a manner that a person of ordinary care would not have been guilty of. That is a fact for you to consider under all the evidence, whether that is true."

MEMORANDUM.——Error from Sedgwick district court; C. REED, judge. Action by G. L. Ditmars and others, partners as Ditmars, Voris & Vandevere, against The Atchison, Topeka & Santa Fe Railroad Company, to recover damages for alleged negligence in shipment of cattle. Judgment for plaintiffs. Defendant brings the case to this court. Affirmed. The opinion herein, filed February 6, 1896, states the material facts.·

A. A. *Hurd*, and F. W. *Bentley*, for plaintiff in error.
J. D. *Houston*, for defendants in error.

The opinion of the court was delivered by

DENNISON, J. : This case was submitted to us at the October, 1895, term of this court, and was on December 7, 1895, ordered dismissed for the reason that no showing was made that the defendants in error were present at the time and place of settling and signing the case, or that they were notified or waived notice thereof, or had waived their right to make amendments. It appears now that this question had been raised in the supreme court in 1891, and upon a motion to dismiss, there had been filed several affidavits bearing upon the presence of W. H. Boone, one of the attorneys for the defendants in error, at the time the case was settled and signed. These affidavits were not delivered to us with the other records in the case, nor was the certified copy of the finding of the supreme court overruling the motion to dismiss given to us with the records. A motion to reinstate the case was heard at the January, 1896, term of this court, and our attention was called to these matters, and the case was ordered reinstated, and is resubmitted for a decision. We will therefore proceed with

the case the same as if it now came to us for the first time accompanied by the affidavits and the certified copy of the journal entry overruling the motion to dismiss. The affidavits filed in support of the case made bring this case clearly within the rule laid down in the case of *Bank of Claflin v. Rowlinson*, 2 Kan. App. 82.

The supreme court, on October 6, 1891, having overruled a similar motion, is also a sufficient reason why we should not now sustain this one. We shall hold that the case is properly before this court, and it will now be considered upon its merits.

The case was originally begun in a justice's court of the city of Wichita, by Ditmars, Voris & Vandevere, against the Atchison, Topeka & Santa Fe Railroad Company, upon a claim set forth in the following bill of particulars (omitting title):

"Plaintiffs state that they are now, and were at all times hereinafter mentioned, partners doing business under the firm name and style of Ditmars, Voris & Vandevere; that defendant is a corporation organized and existing under the laws of the state of Kansas; that on or about the 25th day of October, 1888, plaintiffs shipped over the defendant's road, from Panhandle City, Tex., to Kansas City, Mo., three car-loads of cattle, containing 90 head, for hire then and there paid by plaintiffs to defendant; that by reason of the negligence of the defendant in failing to properly carry said cattle through in proper time and manner the said cattle were greatly damaged and injured, and the market value greatly depreciated; and by reason of the negligence of the defendant and its agents the cattle were bruised and scarred, disfigured and maltreated, and caused to go without food and water for a long space of time, unnecessarily; all to plaintiffs' damage in the sum of $300.

"Wherefore plaintiffs ask judgment for $300 and costs."

This is the only pleading filed in the case. Judgment was rendered against the railroad company for $300, and it appealed to the district court of Sedgwick county. The case was tried with a jury. At the close of plaintiffs' evidence the defendant demurred thereto. The demurrer was overruled. The defendant, electing to stand on the demurrer, introduced no evidence. The court thereupon instructed the jury, and they afterward returned a verdict in favor of plaintiffs for the sum of $300. Judgment was rendered thereon, and the defendant brings the case here for review.

The plaintiffs in error contend that the court erred: (1) In overruling the demurrer to the evidence; (2) in the instructions given to the jury. The first point raised and discussed in the briefs is, whether the company received and transported the cattle as a common carrier, or as a private carrier or bailee. We do not consider it necessary to determine this controversy, for the reason that a sufficient *prima facie* case has been made to sustain the judgment rendered herein, even if the liability of the company is restricted to that of a private carrier or bailee.

This case from the beginning to the end has been conducted upon the theory of damages occasioned by the negligence of the railroad company. The allegations in the bill of particulars of the plaintiffs; the failure of the defendant to plead a limitation of the common carrier's liability; all the evidence in the case; the instructions of the court and the special findings of the jury, all show that negligence is the foundation of the claim. The only exception to this is that Mr. Voris was asked if " they shipped them as common carriers and you paid them for carrying them over the railroad as common carriers," and he an-

swered, "Yes, sir, I did." Waiving, therefore, the question of the liability of the railroad company as a common carrier, what is the liability of the railroad company in this case? If it is not liable as a common carrier, then we apprehend it is liable under paragraph 1250 of the General Statutes of 1889, which reads as follows:

"That railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies."

See, also, *St. L. & S. F. Rly. Co. v. Fruit Co.*, 1 Kan. App. 551.

Under this statute, it is necessary for the plaintiffs to allege and prove the negligence of the company and the damages resulting therefrom. The bill of particulars alleges damages resulting from the negligence of the company, and, at least for the purposes of making a *prima facie* case, the evidence establishes the damages to the cattle and the negligence of the company. It must be remembered that the evidence need not be very explicit to sustain the action of the court in overruling a demurrer to the evidence. If there is any evidence which fairly tends to establish the material allegations necessary to a recovery it is sufficient. In *K. P. Rly. Co. v. Couse*, 17 Kan. 571, the supreme court held:

"As sustaining a demurrer to evidence works a final disposition of the case, the court does not err in overruling such a demurrer whenever there is testimony which, although weak and inconclusive, yet fairly tends to prove every essential fact, and is sufficient to justify a court in overruling a motion to set aside a verdict based thereon."

See, also, *Simpson v. Kimberlin*, 12 Kan. 579; *Jansen v. City of Atchison*, 16 id. 358; *C. R. I. & P. Rly.*

Co. v. *Doyle*, 18 id. 62 ; *Schafer v. Weaver*, 20 id. 296 ; *Waterson v. Rogers*, 21 id. 529 ; *Brown v. A. T. & S. F. Rld.. Co.*, 31 id. 1.

The evidence in this case establishes the fact that the cattle were shipped from Amarilla, Tex., over the Fort Worth & Denver City railroad to Panhandle City, and from Panhandle City over the road of this company to Kansas City, with the privilege of the Wichita market ; that they left Panhandle City about 9 o'clock P. M. on the 24th, and arrived at Wichita, Kan., about 3 P. M. on the 26th, making about 42 hours to come less than 400 miles. It also establishes the fact that the stock was shipped part of the way on local freight trains, and that the train in which they were shipped made quite a number of stops. It also establishes the fact that the motive power was poor and the train a heavy one ; that during the time occupied by some of the stops which were made the train crew did considerable switching ; that the cars containing the cattle were left in the train attached to the engine during the switching ; that the engine would be backed up very abruptly, to obtain slack so the train could be started ; that by reason thereof the cars in which the cattle were standing were bumped very violently and the cattle knocked down when the cars were jammed against each other, and that this occurred several times. It also establishes the fact that the cattle were kept on the cars about 29 hours from Amarilla, and about 24 or 25 hours from Panhandle City, without having been watered, fed, or unloaded ; that they were unloaded into a muddy yard about 9 o'clock at night at Wellington and kept there until the next morning, when they were shipped to Wichita. It also establishes the fact the cattle were good, strong butcher-stuff when they were delivered to the com-

pany, and that, by reason of the things above mentioned, quite a number of the cattle were thrown down and trampled upon, and badly bruised and damaged, so much so that five of them died, and many of the others were scarred and swollen about the head and sides. The evidence establishes many things which were done that an ordinarily prudent man would not do. Surely an ordinarily prudent man would not first weaken his cattle by keeping them a long time in the car without food or water, and then bump the cars in which they were standing so violently as to throw them off their feet. An ordinarily prudent man would refrain from several of the things which were done with these cattle. He certainly would endeavor to have sufficient motive power to run the train. He would also see to it that the train was not so heavy that it could not be handled without such violent bumping, and if he could not well do that, he would certainly have set out the cars containing the cattle while such switching was being done. An ordinarily prudent man, as well as a humane man, would have furnished food and water and rest for the stock before they became so weakened as to be unable to stand up. The showing of the negligence of the railroad company and the damages to the cattle resulting therefrom is sufficient to sustain the judgment rendered in this case ; therefore, it was not error for the court to overrule the demurrer of the plaintiff in error to the evidence of the defendants in error.

The plaintiff in error endeavors to avoid the charge of negligence by claiming that the cattle were in charge of an employee of the defendants in error, and that therefore he was responsible for the care of the cattle. The evidence establishes the fact that one N. C. Houston, who was in the employ of the defend-

ants in error, accompanied the cattle from Amarilla to Wichita. This does not sustain the contention that the cattle were in the charge of Mr. Houston. The evidence in this case does not clearly show when the cattle first came into the possession of the plaintiff in error, but at least when the engine of the railroad company began to move the cars in which the cattle were loaded they were in possession and under the control of the railroad company. No one else was in control of the cars or the railroad. The railroad company dictates in which train they go ; how fast they go ; when they stop ; when they start ; when and where they are unloaded and when reloaded ; what position the cars in which they are loaded shall have in the train ; how heavy the train shall be and how many cars it shall contain ; how much switching shall be done, and when and where it shall be done, and where the cars in which the cattle are loaded shall be while the switching is being done ; and when the cattle shall arrive at their destination. The owner or his employee who may accompany the cattle cannot control one of these things. He is absolutely powerless in the matter. He may watch over the stock and see how they are being handled ; he may do what he can to keep the cattle on their feet while in the cars ; he may help to load and unload them ; he may help about feeding and watering them ; but he must do all this while the cattle are in the possession of the railroad company, and at such times as it chooses to select for the purpose.

During the trial of this case, it was developed that when these cattle were shipped from Amarilla, Mr. Houston got a shipping contract, shippers' release, or pass, or something of that kind, but just what it is does not clearly appear. The plaintiff in error con-

tends that the defendants in error are bound to set up and prove the contents thereof. The nature of the writing does not clearly appear, and we are unable to say whether it should have been pleaded and proved or not. We may say, however, that if it had been an ordinary stock contract by which the railroad company had endeavored to relieve itself from the liability of a common carrier, this case must have been determined upon the same identical lines that it now has been. We may also say that if the railroad company had desired any relief from any contract which may have been entered into, it should have pleaded and proved the contract. Our supreme court has held that it must do this, and also, that if it do not plead the special contract it will not be permitted to prove it. (*Mo. Pac. Rly. Co. v. Grocery Co.*, 55 Kan. 525.)

The instruction of the court complained of is No. 10, which reads as follows :

"Evidence was introduced tending to show that the trains were shifting about and bumping the cars about in a needless manner ; that is to say, in a manner that a person of ordinary care would not have been guilty of. That is a fact for you to consider under all the evidence, whether that is true. If you find the railroad has not given that ordinary care which a man of average prudence, similarly situated, would have given to the stock in question, then in that event you will find a verdict for the plaintiff for the amount of damages which you shall agree on."

After careful examination of the evidence, we fully agree with the trial judge that the evidence tended to prove the statements contained in the instruction, and it was proper to tell the jury that it was for them to decide whether it was true. This instruction and the other instructions given were a fair statement of the law governing the case upon the theory of the claim

for damages caused by the negligence of the railroad company.

No material error prejudicial to the substantial rights of the plaintiff in error having been committed by the trial court, the judgment of the district court is affirmed.

All the Judges concurring.